B1040 (FORM 1040) (12/15)

| ADVERSARY PROCEEDING COVER SHEET<br>(Instructions on Reverse) | ADVERSARY PROCEEDING NUMBER<br>(Court Use Only) |
|---|---|

| PLAINTIFFS<br><br>ROSENDO GONZALEZ, Chapter 7 Trustee, | DEFENDANTS<br>DAVID W. MACMILLAN, an individual; CYNTHIA B. MARTIN, an individual; ASTON BUSINESS SOLUTIONS, INC., a California corporation, ERIC A. MARTIN, an individual, GLENN J. CHAFFIN, an individual; ANDRAE PEREZ, an individual; ACCELERATED CAPITAL GROUP, INC., a California corporation, and DOES I through XX. |
|---|---|
| **ATTORNEYS** (Firm Name, Address, and Telephone No.)<br>James A. Dumas (SBN 76284)<br>DUMAS & KIM, APC<br>3435 Wilshire Blvd., Ste. 990<br>Los Angeles, CA 90010<br>Telephone: 213/368-5000 | **ATTORNEYS** (If Known) |
| **PARTY** (Check One Box Only)<br>☐ Debtor    ☐ U.S. Trustee/Bankruptcy Admin<br>☐ Creditor   ☐ Other<br>☒ Trustee | **PARTY** (Check One Box Only)<br>☒ Debtor    ☐ U.S. Trustee/Bankruptcy Admin<br>☐ Creditor   ☐ Other<br>☐ Trustee |

**CAUSE OF ACTION** (WRITE A BRIEF STATEMENT OF CAUSE OF ACTION, INCLUDING ALL U.S. STATUTES INVOLVED)

COMPLAINT OBJECTING TO DEBTOR'S DISCHARGE AND FOR FRAUDULENT TRANSFER
[11. U.S.C. §§ 105, 541, 548, 727 and 28 U.S.C. §§157 and 2201, and California Civil Code Sections 3439 et seq.]

### NATURE OF SUIT

(Number up to five (5) boxes starting with lead cause of action as 1, first alternative cause as 2, second alternative cause as 3, etc.)

**FRBP 7001(1) – Recovery of Money/Property**
☐ 11-Recovery of money/property - §542 turnover of property
☐ 12-Recovery of money/property - §547 preference
☒ 13-Recovery of money/property - §548 fraudulent transfer
☐ 14-Recovery of money/property - other

**FRBP 7001(2) – Validity, Priority or Extent of Lien**
☐ 21-Validity, priority or extent of lien or other interest in property

**FRBP 7001(3) – Approval of Sale of Property**
☐ 31-Approval of sale of property of estate and of a co-owner - §363(h)

**FRBP 7001(4) – Objection/Revocation of Discharge**
☒ 41-Objection / revocation of discharge - §727(c),(d),(e)

**FRBP 7001(5) – Revocation of Confirmation**
☐ 51-Revocation of confirmation

**FRBP 7001(6) – Dischargeability**
☐ 66-Dischargeability - §523(a)(1),(14),(14A) priority tax claims
☐ 62-Dischargeability - §523(a)(2), false pretenses, false representation, actual fraud
☐ 67-Dischargeability - §523(a)(4), fraud as fiduciary, embezzlement, larceny
(continued next column)

**FRBP 7001(6) – Dischargeability (continued)**
☐ 61-Dischargeability - §523(a)(5), domestic support
☐ 68-Dischargeability - §523(a)(6), willful and malicious injury
☐ 63-Dischargeability - §523(a)(8), student loan
☐ 64-Dischargeability - §523(a)(15), divorce or separation obligation (other than domestic support)
☐ 65-Dischargeability - other

**FRBP 7001(7) – Injunctive Relief**
☐ 71-Injunctive relief – imposition of stay
☐ 72-Injunctive relief – other

**FRBP 7001(8) Subordination of Claim or Interest**
☐ 81-Subordination of claim or interest

**FRBP 7001(9) Declaratory Judgment**
☐ 91-Declaratory judgment

**FRBP 7001(10) Determination of Removed Action**
☐ 01-Determination of removed claim or cause

**Other**
☐ SS-SIPA Case – 15 U.S.C. §§78aaa et.seq.
☐ 02-Other (e.g. other actions that would have been brought in state court if unrelated to bankruptcy case)

| ☐ Check if this case involves a substantive issue of state law | ☐ Check if this is asserted to be a class action under FRCP 23 |
|---|---|
| ☐ Check if a jury trial is demanded in complaint | Demand $   According to Proof |

Other Relief Sought

B1040 (FORM 1040) (12/15)

| BANKRUPTCY CASE IN WHICH THIS ADVERSARY PROCEEDING ARISES ||||
|---|---|---|---|
| NAME OF DEBTOR<br>David Macmillan | BANKRUPTCY CASE NO.<br>2:16-bk-21559-NB |||
| DISTRICT IN WHICH CASE IS PENDING<br>Central | DIVISION OFFICE<br>Los Angeles || NAME OF JUDGE<br>Hon. Neil W. Bason |
| RELATED ADVERSARY PROCEEDING (IF ANY) ||||
| PLAINTIFF<br>Rosendo Gonzalez, Chapter 7 Trustee | DEFENDANT<br>David W. Macmillan et. al. || ADVERSARY PROCEEDING NO.<br>2:17-ap-01485-NB |
| DISTRICT IN WHICH ADVERSARY IS PENDING<br>Central | DIVISION OFFICE<br>Los Angeles || NAME OF JUDGE<br>Hon. Neil W. Bason |
| SIGNATURE OF ATTORNEY (OR PLAINTIFF)<br><br>*/s/ James Dumas* ||||
| DATE<br><br>November 21, 2017 || PRINT NAME OF ATTORNEY (OR PLAINTIFF)<br><br>James A. Dumas ||

## INSTRUCTIONS

The filing of a bankruptcy case creates an "estate" under the jurisdiction of the bankruptcy court which consists of all of the property of the debtor, wherever that property is located. Because the bankruptcy estate is so extensive and the jurisdiction of the court so broad, there may be lawsuits over the property or property rights of the estate. There also may be lawsuits concerning the debtor's discharge. If such a lawsuit is filed in a bankruptcy court, it is called an adversary proceeding.

A party filing an adversary proceeding must also must complete and file Form 1040, the Adversary Proceeding Cover Sheet, unless the party files the adversary proceeding electronically through the court's Case Management/Electronic Case Filing system (CM/ECF). (CM/ECF captures the information on Form 1040 as part of the filing process.) When completed, the cover sheet summarizes basic information on the adversary proceeding. The clerk of court needs the information to process the adversary proceeding and prepare required statistical reports on court activity.

The cover sheet and the information contained on it do not replace or supplement the filing and service of pleadings or other papers as required by law, the Bankruptcy Rules, or the local rules of court. The cover sheet, which is largely self-explanatory, must be completed by the plaintiff's attorney (or by the plaintiff if the plaintiff is not represented by an attorney). A separate cover sheet must be submitted to the clerk for each complaint filed.

**Plaintiffs** and **Defendants.** Give the names of the plaintiffs and defendants exactly as they appear on the complaint.

**Attorneys.** Give the names and addresses of the attorneys, if known.

**Party.** Check the most appropriate box in the first column for the plaintiffs and the second column for the defendants.

**Demand.** Enter the dollar amount being demanded in the complaint.

**Signature.** This cover sheet must be signed by the attorney of record in the box on the second page of the form. If the plaintiff is represented by a law firm, a member of the firm must sign. If the plaintiff is pro se, that is, not represented by an attorney, the plaintiff must sign.

James A. Dumas (SBN 76284)
Christian T. Kim (SBN 231017)
DUMAS & KIM, APC
3435 Wilshire Blvd., Ste. 990
Los Angeles, CA 90010
Telephone: 213/368-5000
Facsimile: 213/368-5009
Email: jdumas@dumas-law.com

Attorneys for the Chapter 7 Trustee,
Rosendo Gonzales

# UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA

## LOS ANGELES DIVISION

| | |
|---|---|
| In re:<br><br>DAVID MACMILLAN,<br><br>Debtors.<br><br>--- | Case No.: 2:16-bk-21559-NB<br><br>Substantively Consolidated with<br>Case No.: 2:17-bk-11588-NB |
| ROSENDO GONZALEZ, Chapter 7 Trustee,<br><br>Plaintiff,<br><br>vs.<br><br>DAVID W. MACMILLAN, an individual; CYNTHIA B. MARTIN, an individual; ASTON BUSINESS SOLUTIONS, INC., a California corporation, ERIC A. MARTIN, an individual, GLENN J. CHAFFIN, an individual; ANDRAE PEREZ, an individual; ACCELERATED CAPITAL GROUP, INC., a California corporation, and DOES I through XX.<br><br>Defendants. | Adversary No.:<br><br>[Honorable Neil W. Bason]<br><br>**COMPLAINT OBJECTING TO DEBTOR'S DISCHARGE AND FOR FRAUDULENT TRANSFER**<br><br>[11. U.S.C. §§ 105, 541, 548, 727 and 28 U.S.C. §§157 and 2201, and California Civil Code Sections 3439 et seq.] |

COMES NOW, Plaintiff and Chapter 7 Trustee Rosendo Gonzalez ("Trustee" or "Plaintiff"), as and for his Complaint herein, complains and alleges as follows:

1

COMPLAINT OBJECTING TO DISCHARGE AND FOR FRAUDULENT TRANSFER AND TURNOVER OF PROPERTY

# I.

## THE PARTIES AND JURISDICTION

1.  This Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §§ 1334 and 157, and this is a core proceeding under 28 U.S.C. §§ 157(b)(1), 157(b)(2)(A), or 157(b)(2)(E). In the event this proceeding is determined to include non-core claims for relief, the Plaintiff consents to the entry of a final order or judgment by the Bankruptcy Court as to any such claims. Venue in the Central District of California, Los Angeles Division (the "Bankruptcy Court"), is proper pursuant to 28 U.S.C. § 1409 in that this adversary proceeding is related to the bankruptcy case of David Macmillan bearing case number Case No.: 2:16-bk-21559-NB, which has been substantively consolidated with the case of Cynthia B. Martin, Case No.: 2:17-bk-11588-NB. The consolidated cases are presently pending under Chapter 7 of Title 11 of the United States Code in the Bankruptcy Court. This Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §§ 1334 and 157 because this is a civil proceeding arising in and/or related to the debtors, David Macmillan and Cynthia Martin, and their Chapter 7 case.

2.  The Plaintiff Rosendo Gonzalez is the duly appointed and acting Chapter 7 bankruptcy trustee for the estate of David Macmillan ("Debtor")

3.  Defendant David W. Macmillan, ("Macmillan"), is a debtor herein.

4.  Defendant Cynthia B. Martin, ("Martin"), is a debtor herein and the wife of defendant Macmillan.

5.  Defendant Aston Business Solutions, Inc. ("ABS") is a corporation organized under and existing pursuant to the laws of the State of California.

6.  Defendant Eric A. Martin ("Erica Martin") is an individual and the daughter of defendant and debtor, Cynthia B. Martin. She is a purported shareholder of defendant ABS.

COMPLAINT OBJECTING TO DISCHARGE AND FOR FRAUDULENT TRANSFER AND TURNOVER OF PROPERTY

7. Defendant Glenn J. Chaffin ("Chaffin") is an individual and the husband of defendant Eric Martin. He is a purported shareholder of defendant ABS and its sole officer and director of record. He and defendant Erica Martin reside at 1147 West 21st Street, San Pedro, California.

8. Defendant Andres Perez is an individual who resides at 17905 South Garfield Avenue, Apartment B, Monterey Park, California.

9. Defendant Accelerated Capital Group, Inc. ("ACG") is a corporation organized under and existing pursuant to the laws of the State of California.

10. Plaintiffs do not know the true names and capacities of the defendants sued herein by the fictitious names DOES I-X, inclusive, and plaintiffs therefore sue those defendants by such fictitious names. Plaintiffs will amend this Complaint to allege their true names and capacities when ascertained.

11. Plaintiffs are informed and believe and thereon allege that each of the fictitiously named defendants is responsible in some manner for the occurrences herein alleged, and that plaintiffs' damages as alleged were caused by the acts and or omissions of such defendants and each of them.

12. Debtor David W. Macmillan commenced the within bankruptcy case by filing a voluntary petition under Chapter 11 of the Bankruptcy Code on August 30, 2016. ("Petition Date") The case was converted to a case under Chapter 13 by a notice dated November 4, 2016, and then converted to a case under Chapter 7 by an order dated April 12, 2017. Cynthia Martin commenced her case by filing a Chapter 13 petition on February 9, 2017. She converted the case to Chapter 7 on April 12, 2017. The two cases were consolidated by an order entered on September 19, 2017.

///

///

Case 2:17-ap-01545-NB    Doc 1    Filed 11/21/17    Entered 11/21/17 14:44:53    Desc
Main Document    Page 6 of 13

## II.

## ALLEGATIONS COMMON TO ALL CLAIMS FOR RELIEF

13. Plaintiff refers to the allegations set forth in paragraph 1 through 12 hereof and incorporates said allegations herein as if fully set forth hereat.

14. For several years prior to 2013, defendant debtors, Macmillan and Martin, through various entities, including a California corporation by the name of Aston Marketing Group, Inc., ("AMG") owned and operated a business which specialized in assisting consumers avoid legal obligations to pay ongoing fees and expenses on timeshare properties which they no longer desired to own. They worked with a large staff at an office located at 2239-2241 West 190th Street in Torrance, California ("the 190th Street Property"), as well as with a marketing staff scattered throughout the country. The 190th Street Property was owned by defendants through an entity by the name of MARMAC, LLC. Defendants marketed their services to owners of timeshares, entered into contracts obligating consumers to pay $3,000 to $6,000 for their services, and thereafter attempted to implement strategies to relieve the consumers of their timeshare obligations. Consumers paid initial deposits with money back guarantees if defendants did not succeed in providing the promised relief. Among the strategies utilized by defendants on behalf of their clients was to transfer timeshares to business entities whose sole purpose was to hold timeshares. By 2013, defendants and their companies were under contract with approximately 9,000 parties who had paid deposits to them and who would be entitled to refunds if defendants could not provide them relief from their timeshare obligations.

15. In or about 2013, new laws and regulations concerning the liability of timeshare owners on their timeshare contracts came into effect which effectively broke defendants' business model. These laws not only made it impossible for consumers to avoid liability for their timeshare obligations by such strategies as transferring the timeshares to corporations, they created potential criminal liability for such activities. This effectively made it extremely difficult for defendants to continue to provide the services they had promised their clients and gave rise to an enormous potential liability to them. As a consequence of this, defendants made the decision to cease being

4
COMPLAINT OBJECTING TO DISCHARGE AND FOR FRAUDULENT TRANSFER AND TURNOVER OF PROPERTY

involved in providing the services they had been promising and to thereafter devote themselves to marketing for new potential clients on behalf of other companies which would actually provide the "fulfillment."

16. In implementing this new business model, defendants were seeking to leverage their most valuable assets: their existing marketing infrastructure of employees and contract marketers and their valuable and proprietary data base of potential clients.

17. Concerned with their liability to their existing clients, and that of AMG and other the entities through which they had been operating, defendants transferred substantially all of the marketing infrastructure and the access to the proprietary data base to entities that ostensibly were neither owned nor controlled by them. In particular, the continuation of their operations with this new business model was undertaken by defendant ABS, which filed its articles of incorporation on August 12, 2013 and was ostensibly owned and controlled by defendants Erica Martin and Chaffin. Both Erica Martin and Chaffin had worked for AMG and Chaffin had been its chief financial officer. ABS had its offices at the 190th Street Property and used substantially the same staff and marketing team that had worked for AMG. Although Chaffin was ostensibly the sole officer and director, ABS has at all times been controlled by defendant Macmillan and operated for the benefit of defendants Macmillan and Martin.

18. In the period from the creation of ABS on August 12, 2013 until Macmillan's bankruptcy filing on August 30, 2016, defendants conducted their business operations through various entities, including ABS. During this period they became involved in approximately fifteen lawsuits and investigations by the attorneys general for the states of Washington, Vermont, and Hawaii related to their former and current activities.

19. In his bankruptcy filing, Macmillan testified that he was the owner of the following "current companies": MARMAC, LLC (the owner of the 190th Street property), Merchant Solutions, Inc., Time Share Relief, Attitude Marketing, Inc. ("Attitude Marketing"), and defendant ACG. He testified that he was employed by Attitude Marketing, as did Martin in her subsequent bankruptcy. Macmillan identified 26 other entities that he had either transferred or which were "closed." No mention was made of ABS. In her subsequent filing Martin identified only one business entity that

she owned, Attitude Marketing, although she subsequently orally testified that she had no interest in the company.

19. Subsequent to the filing of the Macmillan bankruptcy, the 190th Street property was foreclosed, and the defendant debtors moved their operations to a new location in Torrance located at 23740 Hawthorne Boulevard, Suite 104.

20. In his bankruptcy filing, Macmillan identified an entity by the name of Racso Enterprises, LLC ("Racso") as an entity that he had owned but which was "owned by someone else now." Macmillan subsequently testified that he had transferred Racso, which had no assets, to defendant Andres Perez for no consideration. Racso was a California limited liability company which Macmillan had formed on August 1, 2012. On September 22, 2016, defendant Perez filed a Statement of Information with the State of California identifying him as the "manager" of Racso and stating that its "type of business or services" was "airplane ownership and leasing." In fact, in 2015, Macmillan through Racso had purchased a 50% interest in an airplane. The other 50% was owned by a company known as Beach Air, LLC.

21. In November, 2016, Racso and Beach Air sold the airplane to a third party for $640,000, leaving $27,000 after payment of a loan against the plane which was divided between the two owners.

22. At the time of Macmillan's bankruptcy filing, defendant ACG was an active company with employees and independent contractors in multiple states. Macmillan has testified that subsequent to the bankruptcy filing he transferred his acknowledged controlling interest in the company back to ACG for no consideration and without seeking Bankruptcy Court approval.

23. The trustee is informed and believes, and on that basis alleges, that defendants Macmillan and Martin have failed to disclose other assets that they continue to control. He believes they have disguised this control by transferring ostensible ownership to the defendants sued herein as Does 1 through 5. The trustee's investigation into the defendant debtors' complicated financial affairs is continuing and he will amend this Complaint to name Does I through V as soon as their identities have been ascertained.

24. The trustee is informed and believes, and on that basis alleges, that Macmillan and

Martin have failed to disclose other assets which had been transferred to Does VI through X pre-petition in fraud of creditors which were then sold pre-petition.

25. Pursuant to orders for Rule 2004 examinations, defendants Macmillan and Martin have been ordered to produce various documents concerning their financial history. Defendants have willfully failed to produce documents in response to these orders.

### III.

### FIRST CLAIM FOR RELIEF OBJECTING TO DISCHARGE

( 11 U.S.C. §727(a))

(**Against Defendants Macmillan and Martin**)

26. Plaintiff refers to the allegations set forth in paragraph 1 through 25 hereof and incorporates said allegations herein as if fully set forth hereat.

27. Defendant Macmillan is liable to have his discharge denied pursuant to the provisions of 11 U.S.C. §727(a)(1) due to his transfer of his interest in Racso for no consideration and with the intent to hinder, delay, and defraud creditors within one year prior to the bankruptcy filing.

28. Defendant Macmillan is liable to have his discharge denied pursuant to the provisions of 11 U.S.C. §727(a)(2) due to his transfer of his interest in ACG after the bankruptcy filing for no consideration and without Bankruptcy Court approval.

29. Defendants Macmillan and Martin are liable to have their discharges denied pursuant to the provisions of 11 U.S.C. §727(a)(3) due to their concealment and/or destruction and/or failure to preserve documents from which their financial condition and business transactions might be ascertained.

30. Defendants Macmillan and Martin are liable to have their discharges denied pursuant to the provisions of 11 U.S.C. §727(a)(4)(A) due to their false testimony regarding the nature, value, and extent of their control and *de facto* ownership of the business being conducted by ASB, Attitude Marketing, and related entities and the fact that these businesses possess valuable assets, including proprietary data.

31. Defendants Macmillan and Martin are liable to have their discharges denied pursuant

to the provisions of 11 U.S.C. §727(a)(4)(D) due to the fact that they have withheld documents pertinent to their property and financial affairs.

32. Defendants Macmillan and Martin are liable to have their discharges denied pursuant to the provisions of 11 U.S.C. §727(a)(5) due to their inability to explain satisfactorily the loss or deficiency of assets to pay their liabilities.

33. Defendants Macmillan and Martin are liable to have their discharges denied pursuant to the provisions of 11 U.S.C. §727(a)(6) due to their failure to produce documents in response to an order of the Court.

## IV.

## SECOND CLAIM FOR RELIEF FOR FRAUDULENT TRANSFER

**(11 U.S.C. §§ 105, 541, 548, and California Civil Code §§3439 et seq.)**

**(Against Defendants Aston Business Solutions, Inc, Erica Martin, Chaffin, and Does I through X)**

34. Plaintiff refers to the allegations set forth in paragraph 1 through 25 hereof and incorporates said allegations herein as if fully set forth hereat.

35. No earlier than August 12, 2013, Macmillan and Martin transferred the assets and good will of their businesses, including AMG, to defendants ABS, Erica Martin, Chaffin, and Does I through X without receiving reasonably equivalent value in exchange.

36. The effect of these transfers was that the value of the remaining assets of Macmillan and Martin were unreasonably small in relation to their known and reasonably anticipated debts as they existed at the time of the transfer and as they could expect to arise from the businesses they were conducting. The transfers thereafter rendered the debtor's incapable of paying their debts as they fell due.

37. The transfers were undertaken by Macmillan and Martin with the actual intent to hinder, delay, and defraud their creditors.

38. Plaintiff is entitled to a judgment avoiding the transfers and/or a money judgment

against each defendant equal to the value of the assets transferred.

39. Plaintiff is further entitled to an award of exemplary and punitive damages against defendants, and each of them, according to proof.

## IV.

## THIRD CLAIM FOR RELIEF FOR FRAUDULENT TRANSFER

(11 U.S.C. §§ 105, 541, 548, and California Civil Code §§3439 et seq.)

**(Against Defendant Perez)**

40. Plaintiff refers to the allegations set forth in paragraph 1 through 25 hereof and incorporates said allegations herein as if fully set forth hereat.

41. At or about the time that he filed bankruptcy, Macmillan transferred his interest in Rasco to defendant Perez, without receiving reasonably equivalent value in exchange.

42. The effect of this transfer was that the value of the remaining assets of Macmillan and Martin were unreasonably small in relation to their known and reasonably anticipated debts as they existed at the time of the transfer and as they could expect to arise from the businesses they were conducting. The transfer thereafter rendered the debtors incapable of paying their debts as they fell due.

43. The transfer was undertaken by Macmillan with the actual intent to hinder, delay, and defraud the creditors of himself and Martin.

44. Plaintiff is entitled to a judgment avoiding the transfer and/or a money judgment against defendant equal to the value of the asset transferred.

45. Plaintiff is further entitled to an award of exemplary and punitive damages against defendant, according to proof.

///

///

///

///

## V.

## FOURTH CLAIM FOR RELIEF TO AVOID POST-PETITION TRANSFER

### (11 U.S.C. §§ 105, 541, 549)

### (Against Defendant ASG)

46. Plaintiff refers to the allegations set forth in paragraph 1 through 25 hereof and incorporates said allegations herein as if fully set forth hereat.

47. After he filed bankruptcy, Macmillan transferred his interest in ASG to defendant ASG, without Bankruptcy Court approval and without receiving reasonably equivalent value in exchange.

48. Plaintiff is entitled to a judgment avoiding the transfer and/or a money judgment against defendant equal to the value of the asset transferred.

## VI.

## PRAYER

WHEREFORE, Plaintiff prays for judgment as follows:

**ON THE FIRST CLAIM FOR RELIEF:**

For a judgment against defendants Macmillan and Martin denying them their discharges.

**ON THE SECOND CLAIM FOR RELIEF:**

For a judgment against defendants ABS, Erica Martin, Chaffin, and Does I through X avoiding the fraudulent transfers and/or for money judgments equal to the value of the assets transferred.

**ON THE THIRD CLAIM FOR RELIEF:**

For a judgment against defendant Perez avoiding the fraudulent transfer and/or for a money judgment equal to the value of the asset transferred.

COMPLAINT OBJECTING TO DISCHARGE AND FOR FRAUDULENT TRANSFER AND TURNOVER OF PROPERTY

**ON THE FOURTH CLAIM FOR RELIEF:**

  For a judgment against defendant ACG avoiding the post-petition transfer and/or for a money judgment equal to the value of the asset transferred.

**ALL CLAIMS FOR RELIEF:**

  1. For prejudgment interest;

  2. For costs of suit; and

  3. For such other relief as the Court deems just and proper.

Dated: November 21, 2017    DUMAS & KIM, APC

              By: /s/ James Dumas
              James A. Dumas,
              Attorneys for Plaintiff and Chapter 7 Trustee,
              Rosendo Gonzalez

COMPLAINT OBJECTING TO DISCHARGE AND FOR FRAUDULENT TRANSFER AND TURNOVER OF PROPERTY